TATE, Judge.
On February 14, 1960, a heavy glass transom fell from above the front door of a residence and broke upon the head of the plaintiff’s eight-year-old daughter, Sara Beth. By this suit against the building owner’s liability insurer the plaintiff seeks on behalf of his minor child to recover damages for her personal injuries and disfigurement resulting from the accident.
The defendant insurer appeals from the jury award of $3,500, questioning such award as excessive. The plaintiff’s answer in this court prays that the award be increased. Thus the only issue upon appeal is as to the quantum of the award.
The evidence shows that as a result of the accident Sara Beth sustained multiple *554 lacerations on the face and scalp. She was brought to the doctor and her cuts were sutured but, although she had lost a lot of blood, she was not hospitalized. The little girl’s stitches were removed about two weeks after the accident. She lost three weeks of school and, thereafter for several months, occasional days because of headaches. Fortunately, except for the disfigurement to be described below, there was no permanent residual from the injuries.
The chief item of damages for which the plaintiff seeks recovery on behalf of his little girl is the disfigurement and consequent social handicap and mental embarrassment resulting from various residual scars about her face and head. The medical witnesses agree that these scars are permanent, and that they cannot be cured by cosmetic surgery, nor will they appreciably improve with the passage of time. On the other hand, the scars are well-healed, fine lineal scai-s, producing no distortion of the facial features other than their simple presence on the face. They are not discolored nor swollen, and most of them cannot be noticed at a distance of twenty feet or so.
A physician testifying for the plaintiff stated that such “scars were largely confined to the forehead, lips and chin, especially the forehead.” A physician testifying for the defendant stated that the little girl had “primarily” four scars producing “minimal” disfigurement, in addition to some very minute pitted areas on the cheeks, namely:
(1) A 1 and J^-inch vertical scar on the forehead above the medial right eyebrow;
(2) A %6-inch vertical scar on the right side of the forehead above the right eyebrow ;
(3) A :}4-inch scar below the right side of the lower lip; and
(4) A 1 and {/¿-inch scar on the left side of the scalp, completely concealed by the hair.
In discussing the defendant’s motion for a new trial, following the jury verdict, our learned trial brother commented: “From my observation of the little child at a distance of about fifteen to twenty feet, there was only one of the scars discernible, the one on the forehead, and it was not particularly disfiguring from that distance. So I would say that although the child did have four scars, one of which was in the hairline, they were not greatly disfiguring.”
In denying such motion for a new trial or remittitur on the ground that the award was excessive insofar as it exceeded $1,500, our very able trial brother also stated: “* * * [0]n the basis of the jurisprudence I personally feel that the award was high. I am not sure I would have given as much as $3,500.00 for such personal injuries and disfigurement. * * * Nevertheless, I do not feel that it is so excessive that the Court should require that the case be tried over again if the plaintiff should not agree to remit; and under the circumstances I must necessarily deny the application for a new trial.” The trial court further commented that the appellate courts have greater latitude than the trial courts in reducing awards, without forcing the litigants to go to the trouble and expense of a new trial.
 Insofar as the appellate court is concerned, we have recently restated the general standards of review of trial awards as follows: “The trial court has much discretion in the award of general damages for pain and suffering, and the trial court’s award should not ordinarily be disturbed upon appellate review since such awards of necessity are somewhat arbitrary in nature and must vary greatly according to the facts and circumstances of each case; although nevertheless awards should be made so that there is some degree of uniformity in cases involving similar injuries, after taking into account the great variation in circumstances surrounding each injury * * * [citations omitted]”. Jobe v. *555 Credeur, La.App., 125 So.2d 487, at 488-489.
In support of their respective theses that the jury award is either excessive or inadequate, able counsel cite many decisions with widely varying lower or higher awards for allegedly comparable injuries. And indeed, while many of the decisions may concern distinguishable circumstances, at least some of them do support the opposing contentions respectively made by opposing counsel, after taking into consideration the greater or lesser severity of the injuries relative to the present facts and (in the case of the older awards) the decreasing purchasing power of the dollar over the decades.
For instance, the plaintiff relies upon the following Louisiana decisions: Distefano v. Delta Fire & Cas. Co., La.App. 1 Cir., 98 So.2d 310, 1957, $2,000 principally for four inconspicuous scars on a boy in his late teens; Gillespie v. Louisiana Long Leaf Lbr. Co., La.App. 2 Cir., 185 So. 116, 1938, $2,000 for inch-long scar on cheek, and slight unobservable scars on nose and lip, of a 28 year old unmarried lady; Marquez v. Le Blanc, La.App.Orl., 143 So. 108, 1932, $2,500 principally for scar on cheek of a 9 year old girl, which had required twelve sutures but which would become less prominent as the child grew older; Dyess v. Landry, Orl., 15 La.App. 403, 132 So. 242, 1931, $3,000 principally for disfigurement caused by very noticeable scar on right cheek of a comely, unmarried, 23 year old nurse, the appearance of which scar might be improved by plastic surgery.
Able counsel for the defendant relies upon the following awards of between $750 and $2,500, made between 1954 and 1961, in support of his contention that the present award is excessive: Williams v. Parker, La.App. 1 Cir., 130 So.2d 711, syllabus 8; Ross v. Insurance Company of the State of Pa., La.App. 2 Cir., 128 So.2d 230; Simmons v. Ouachita Coca-Cola Bottling Company, La.App. 2 Cir., 125 So.2d 196; Carlisle v. Parish of East Baton Rouge, La.App. 1 Cir., 114 So.2d 62; Billiot v. Noble Drilling Corp., La.App.Orl., 102 So. 2d 569, annulled on other grounds, 236 La. 793, 109 So.2d 96; Thomas v. Rosenthal, La.App.Orl., 100 So.2d 555; Stroud v. Standard Accident Ins. Co., La.App. 2 Cir., 90 So.2d 477; Johnson v. Whitfield, La. App. 3 Cir., 89 So.2d 413; Autenreath v. Southern Mercantile Co., La.App. 2 Cir., 81 So.2d 168; Mitchell v. State, La.App. 2 Cir., 81 So.2d 62; Taormina v. Reid, La. App.Orl., 71 So.2d 351.
The Billiot, Simmons, and Mitchell decisions involved smaller and/or more concealed scarring, while the Ross case concerned a more unsightly scar which, however, was on the face of a 59-year old married lady; although all of these decisions do tend to support a lower award! in the present instance than was made by the jury. The Carlisle case, in which a $2,000 award was in large part made for the disfigurement caused by a tort-caused •deflection in the nose of a teen-aged girl characterized by the trial court as “awfully slight”, might also to some degree support such contention by the defendant.
In the Stroud case, however, an award for a teen-aged girl’s facial scars was reduced from $5,000 to $2,500; in large part because, following plastic surgery to repair the disfigurement, there was a presumption against any substantial permanency of the disfigurement because the attending physician and the operating surgeon were not called to testify concerning it. Likewise, the Williams, Autenreath, and Ta-ormina cases concern non-permanent or less serious scars to young boys or men. and are not very persuasive. The courts based the small awards in the Thomas and Johnson cases in part upon the financial inability of the respective uninsured defendants to respond in damages.
Taking into consideration all the circumstances reflected by this record, as well as the cited decisions, we have come to the conclusion that we cannot say that the present award is so manifestly excessive or disproportionate to other awards as *556 to require a reduction, nor can we hold that it is manifestly insufficient. See also Hoffpauir v. Southern Farm Bureau Cas. Ins. Co., La.App. 3 Cir., 124 So.2d 409, affirming an award of $3,500 for — together with temporary discomfort and suffering following the accident equivalent to those shown by the present facts — the slight permanent disfigurement in the nose of a young girl residual from the accident.
■ In the first place, the fact that to middle-aged men these scars may not seem significantly disfiguring is no measure of the present or future mental anguish or social embarrassment endured or to be endured by what the record shows to be a very shy young girl, with her teen age years still before her, who is even now being caused unhappiness by being teased as “scarface” by the young boys in her class at school. In the Carlisle case, for instance, comment was made as to the shadow case on the life of a young girl by a disfigurement which, to many others, was relatively slight. 114 So.2d 62, at 69.
Further, as the cited decisions note, generally a larger award is made to a young girl or an unmarried lady for disfigurement caused by reason of facial scarring than might be made for the same relative disfigurement sustained by a male. Since “pulchritude is one of the prime attributes of the female, the youngster will be more affected when she grows to womanhood than would a young man,” Billiot v. Noble Drilling Co., La.App.Orl., 102 So.2d 569, 572.
Finally, while the evidence indicates that only one of the scars is discernible at a distance of from 15-20 feet, the evidence also indicates that more scarring and pitting is visible close up. This court, which has not had the opportunity as did the trier of fact to actually see the little girl in person (or even to estimate the extent of this scarring through photographs), simply is not in a position to hold that the award for the scarring is excessive; for, even though most of it may not be visible at a distance, it is of course nevertheless disfiguring insofar as the young girl is concerned, who will see it every morning in her mirror for the remainder of her life.
To adopt the succinct conclusion by Judge Bolin as organ for our brethren of the Second Circuit, “Our courts have stated on numerous occasions, that in cases such as this there is no set formula or equation to use in establishing the proper award, but that to the contrary, each case must be decided on its own peculiar and particular facts. Our courts have also repeatedly affirmed the time-worn principle of law that judgments presenting purely questions of fact will not be reversed on appeal except where manifest error is found. With these two cardinal principles in our minds, we can see no good reason to disturb the findings of the trial judge in arriving at an award * * * for the personal injury involved herein,” Griffith v. Yellow Cab Co. of Shreveport, Inc., La.App., 123 So.2d 769, 772.
For the foregoing reasons, the trial court judgment is affirmed at the cost of the defendant-appellant.