LOTTINGER, Judge.
This matter and the companion suit entitled Travelers Insurance Company v. Reeves, La.App., 85 So.2d 639 are the result of a certain automobile.collision which occurred in the .Parish of Calcasieu on or about the 21st.day of October, 1954. In the suit filed by Price-Dunham-Fenet Brick Manufacturing Company, Inc., the plaintiff seeks the sum of .$627-96, being the amount of damages incurred plaintiff’s truck which was involved in the acqident, together with the sum of $380 for the-loss of the use of the truck.. In the other suit, the plaintiff, The Travelers Insurance Company, seeks to recover the sum of $1,139.70, being the amount paid by it to Joseph M. Decluet in workmen’s compensation benefits. Both suits were consolidated for purposes of trial and this appeal.
The petition alleges that on or about October 21, 1954, at approximately 9:20 A.M., an employee of the Price-Dunhám-Feriet Brick Manufacturing Company, Inc., Joseph M. Decluet, was driving'a 1948 Diamond T truck, owned by petitioner and used in its business, in an easterly direction on U. S. Highway 90 on the Calcasieu River Bridge. west of Lake Charles, Louisiana. The further allegation is made that the said employee, Decluet, was driving the truck at the time at a safe and reasonable speed in his proper lane of traffic when he was suddenly struck from the rear by a 1954 Plymouth Sedan automobile owned and driven by the defendant. Negligence is pleaded against Reeves in that he was not keeping -a proper lookout, did not have his vehicle under control, and was traveling at an excessive and dangerous rate of speed. Alternatively, -the plaintiff claims that as the truck was struck from the rear by the *636 defendant, the latter had exclusive knowledge of the facts succeeding the accident and that thus the doctrine of res ipsa loqui-tur is applicable and should be applied.
The defendant’s answer admits that the plaintiff’s truck was struck from the rear by the Plymouth Sedan owned and driven by the defendant on the day and at the time alleged, but generally denies the remaining allegations of the petition. The answer then goes on to allege that immediately prior to the collision the defendant was proceeding in an easterly direction in his right-hand lane of traffic on the upgrade of the Calcasieu River Bridge following at a safe distance behind a certain panel truck. It is then set out that at a point approximately half way up the west side of the Calcasieu River Bridge (which is a four-lane highway) the panel truck which the defendant had been following suddenly turned into the left-hand lane of traffic used by vehicles traveling in an easterly direction and that the defendant continued in his lane for approximately 30 feet before he saw the plaintiff’s truck which was stopped in the right-hand lane of traffic some 10 or 15 feet ahead of him. The defendant avers that he was unable to see the plaintiff’s truck beforehand because of the fact that there was a large fire below and to the south side of the bridge which caused a great volume of smoke which had formed a dense screen along the south lane of traffic on the bridge. The further allegation is made that the smoke screen obscured the plaintiff’s truck until it was too late to avoid the accident. Negligence is pleaded against the driver of plaintiff’s truck in stopping in his lane of traffic within the smoke screen and defendant reconvened for the amount of $5,304 representing the physical and property damage sustained by him.
It was stipulated in the Court below that the damages sustained by the Price-Dun-ham-Fenet Brick Manufacturing Company, Inc. insofar as damage to the truck was concerned, amounted to $627.96, and that the compensation benefits expended by the Travelers Insurance Company for Joseph Decluet amounted to $1,139.70. It was further stipulated that the defendant expended the amount of $304 for doctor and hospital expenses and repairs to his automobile. Following trial on the merits, judgment was rendered in favor of the Price-Dunham-Fenet Brick Manufacturing Company, Inc. for $627.96 and in favor of the Travelers Insurance Company for $1,-139.70. Following the denial of an application for a rehearing, the defendant effected suspensive appeals to us in both cases.
 The issues presented are purely factual and, unfortunately, as so often the case, the testimony is in direct conflict. According to Joseph Decluet, the driver of the truck, the defendant was first noticed by him when he was about 100 feet from the top of the bridge at which time the defendant was at the foot thereof. He stated that the defendant at that time appeared to be going very fast. According to him, the accident occurred when he was about fifty feet from the top of the bridge in his own right-hand lane of travel driving at a speed of between 20 and 25 miles per hour. On cross-examination, he testified that he never observed any automobiles between his truck and defendant’s car. He stated further that there was a fire and some smoke but not enough smoke to have obstructed vision in either a westerly or easterly direction on the approach to the bridge and further that the smoke was not within the immediate vicinity of where the accident took place.
John Decluet, a brother of Joseph De-cluet, testified that at the time of the accident he also was employed by the Price-Dunham-Fenet Brick Manufacturing Company, Inc. and was riding on the right in the truck- cab. This witness stated that they were proceeding east in their right-hand lane of traffic but that he never saw the Reeves automobile before the accident. He stated that at the time of the accident his brother was proceeding at approximately 20 to 25 miles per hour. On cross-examination he testified that when they were about half way up the bridge, he noticed a fire, and that the truck at that time was going maybe 5 or 10 miles faster than it *637 was when the accident actually' occurred. According to him, the accident occurred in the vicinity of where the smoke was on the bridge,, but, as he termed it, there “wasn’t much smoke.” On redirect examination, he. reiterated .that there was .not too much smoke and added that one could see all the way from the bottom of the bridge to the top..
The testimony of defendant, Blanchard Reeves, is 'in complete conflict with that given by the two witnesses mentioned above. According to this witness, he was proceeding at a speed of approximately 40 miles per hour'as he approached the west end of the bridge, at which time there was a panel truck immediately in front of him in the same lane of traffic. Reeves stated that he did not immediately pass this truck but continued to follow it as they both went up the bridge. He stated that at the locale of the accident, there was a lot of smoke which obscured his vision and which he could not see through. He testified that as he traveled up the bridge,, he followed the panel truck at á distance’of from 6 to 10 feet; that the truck entered the smoke first arid that upon so doing it slowed down and then cut over to its left. According to him, he traveled only a few feet after the truck turned and then’, for the first time, saw the truck when it was too late to stop. This witness testified positively that the smoke was dense, that the plaintiff’s truck was stopped and that its left door was open.
There were several other witnesses who testified, but as none of them actually saw the accident, we are of the opinion, as was the trial judge, that their testimony is of little value. There is no physical evidence in the record and to resolve the issue presented we must base our opinion entirely upon the credibility of the witnesses. The trial judge believed the testimony given by the DecJuet brothers, who, incidentally, were no longer in the Price-Dunham-Fenet Brick Manufacturing Company, Inc.’s employ at the time of the trial, and we are not in a position to state that in so doing, he committed manifest error. We are like-vrise of the opinion that the density of the smoke at the place of collision was not such 'as to impair the vision of defendant when we consider the height of the bridge and the source of the smoke. The defendant testified that the panel truck he was following at'a distance of 6 to 10 feet moved into the left-hand lane of traffic in order to pass around plaintiff’s- truck. .Assuming that this' -panel truck was actually in front of defendant, if the driver of the panel truck was able to see and pass around the Price-Dunham truck, then the same opportunity was or should have been available to defendant. It is clearly seen, therefore, that- smoke did not cause- the driver of the panel truck to run into- the rear end of plaintiff’s truck nor did an alleged stopped vehicle cause the panel truck any difficulty whatsoever. We must conclude, therefore, that it was the excessive' speed, failure to observe what he should have observed and the act of. following the panel truck too closely on the part of defendant that proximately caused the accident.
Further, assuming for the sake of argument that defendant’s version -of this accident is true, we are of the opinion that the case would be similar to that of Thiaville v. Toups, La.App., 25 So.2d 361, 362 wherein the plaintiff suddenly encountered a thick fog bank and stopped her car. While she was-parked in the fog, the defendant struck her from the rear and Justice McCaleb, the then organ of the Court, found and stated as follows:
“An examination of the record of the- case exhibits beyond any doubt that Toups was guilty of the grossest sort of negligence. The accident occurred on the Gentilly Highway on a dark and foggy morning. Gentilly Highway is the main artery for vehicular traffic leading from and into the city of New Orleans to and from the east. It is a wide, paved, four lane highway separated by a neutral ground. There are two outbound lanes and two inbound lanes. On the morning of the accident, plaintiff, accompanied by her sister and two colored workmen, was travelling east on the highway. As she neared ‘Nine Mile Post’, she encoun- *638 ■ tered a heavy fog which was so dense that her visibility of the roadway-was obscured. Confronted by this fog, she stopped her. car either on the right-hand, shoulder- of- the roadway or. partially thereon, where she remained, with her lights burning, for approximately ten or fifteen minutes. While thus parked, Toups, driving his automobile' into the fog at an admitted speed of 35 miles an hour, crashed1 into the -rear of plaintiff’s car. The impact, was, so violent that,, as a result thereof, plaintiff’s car was propelled forward from .its parked position a distance of between 75 and 100 feet, where it finally came to rest against a fence on' the right-hand side of the road and sustained damages amounting' to $597.38. The' Toups . car-- was. also damaged-, to the extent of $443.12.
“The only' explanation offered .by Toups for the. accident is' that he was suddenly confronted with a blanket of fog and that he struck plaintiff’s car while he was attempting to bring- his automobile to a ■ stop. This weak .excuse can avail .Toups naught for-he owed a legal duty to the public to have his car under control and to refrain from operating it at a speed, and in such manner as -might cause injury to ■ others. . ■
“We further fail to see any .merit in defendant’s plea that plaintiff was guilty of contributory negligence.' The record reveals to our satisfaction that' she followed a 'most reasonable course and' acted with prudence in stopping her car when she drove into the heavy' fog. She says (and three other' witnesses corroborate her) that her car was brought to ‘a stop on the shoulder of the road. Toups denies this and asserts that'it was stopped in the right; or slow lane, of the highway. The judge evidently accepted plaintiff’s tes- . timony on this disputed : fact and we .think he was justified in so doing.
“Apart from this, even though we-thought 'that Toups’ testimony (that-plaintiff’s car was parked in the slow traffic lane) should prevail, this'would not furnish, df itself, a sufficient reason to condemn plaintiff as negligent. Since the record discloses that the fog was. very thick and that vision was limited to a few feet, plaintiff manifestly encountered considerable difficulty in determining the width, of the shoulder of the road and it might have been exceedingly hazardous for her to proceed too far thereon. Hence, if .she failed to park entirely on the shoulder, we cann.ot -regard her error as legal fault.
“Moreover, even if'-We believed that plaintiff parked wholly in the roadway and was at fault in so doing, her negligence in this respect had--become pás-sive at-the time of the accident. In such ■ case, the^ doctrine of last clear chance would'be applicable under the wel-l-estabished' jurisprudence of this state. See Raziano v. Trauth, 15 La.App. 650, 131 So. 212; and O’Rourke v. McConaughey, La.App., 157 So. 598; and authorities there ’ cited.” ’ .
It is apparent that the accident was caused solely by the negligence of defendant and he, must accordingly be held liable. Though the judgment of the trial court did not award to the plaintiff Price-Dunham-Fenet Brick Manufacturing Company, I'nc. ' the $380 for loss of use of the truck, inasmuch as the plaintiff has neither appealed nor answered the' appeal, we are not called upon to consider this item of damages. : -
Finding no manifest error in the judgment appealed from, the same is hereby affirmed. ■' - ,
Judgment affirmed;